IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | No. 17 CR 53 |
| vs. | ) | |
| | ) | |
| MICHAEL CLARK | ) | |

## POST-HEARING MEMORANDUM

COMES NOW Defendant, Michael Clark, by and through his attorney, Beau B. Brindley, and provides the following post-hearing memorandum in support of his *Franks* motion:

On October 14, 2015, Investigator Todd R. Maas applied for, and was granted, a warrant to search to search a Baywalk Inn hotel room where Mr. Clark was located. In the probable cause section of the affidavit, Maas reported to the court that a "Confidential Reliable Informant" told Maas that he had given an unidentified person a ride to the Baywalk Inn to purchase heroin. The affidavit does not state that the CI or the unidentified rider acted under police supervision or direction. The rider met with a black male, not the defendant, and there was an alleged handoff of cash and suspected heroin. The rider returned to the vehicle, showed the suspected heroin to the CI and they left. There is nothing in the affidavit about the rider's credibility or reliability and THE affidavit made multiple material omissions concerning the credibility of the CI, who did not appear before the issuing judge.

The Fourth Amendment's strong preference for the use of search warrants calls for probable cause determinations by a "neutral and detached magistrate" as opposed to "officer[s] engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948). The application for a warrant "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit. "[A] search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information," or by omitting material information from the affidavit provided to the issuing judge. *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013), citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). To invalidate a warrant on this basis, a defendant at a *Franks* hearing must prove by a preponderance of the evidence either falsity or recklessness, as well as materiality. *McMurtrey*, 704 F.3d at 509.

Where an affidavit is based primarily on tips from an informant, probable cause is based on the totality of the circumstances. *Gates*, 462 U.S. at 238; *United States v. Glover,* 755 F.3d 811, 816 (7th Cir. 2014). In cases based on informants' tips, five factors are of particular relevance: (1) the level of detail the informant provided; (2) the extent to which the informant's information is based on his or her own first-hand observations; (3) the degree to which police have corroborated the informant's information; (4) the time elapsed between the events reported and the warrant application; (5) and "whether the informant appeared or testified before the magistrate." *Glover*, 755 F.3d at 816, citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011). Information omitted from a warrant application is material when its omission affects the probable cause determination. *Glover*, 755 F.3d at 820. Where a warrant is obtained based on an informant's tip, "information about the informant's credibility or potential bias is crucial." *Id.* at 816.

In performing this probable cause inquiry, courts must keep in mind that a search warrant for a home, business, or even hotel room serves to authorize highly intrusive and even destructive actions by the police, and that informants, especially in drug cases, can be unreliable and motivated by rivalries or revenge. *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018); *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009) ("For all we know, [the informant] could have been a

rival drug dealer, an angry customer, or had some other beef" with the defendant).

Materiality in this case has thus been readily established. As the Seventh Circuit found:

The corroboration in this case was much weaker than in the cases where we upheld warrants' validity in the face of credibility omissions. This case is more akin to *Glover*, where the warrant application depended so heavily on the credibility of the informant. Here, the police had no controlled buys. They never saw money or drugs change hands. Even the informant did not claim to have seen drugs or money change hands. If his tip did not pan out, he had plenty of deniability. He claimed only that his passenger had met with "Big Mike" outside his presence to buy heroin. And the "mom on a mission" had no track record of credibility and provided no specifics to support her suspicions of the man she had followed to Room 203. In sum, the foundation for probable cause independent of the credibility of the informant was so meager in this case that the credibility of the informant was material,

*United States v. Clark*, 935 F.3d 558, 565–66 (7th Cir. 2019). Investigator Maas's testimony at the *Franks* hearing before this Court did not change any of these findings that the Seventh Circuit has already made, and indeed served to only further crystallize them. In this case, almost the entirety of the probable cause determination was derived solely from the informant's tip, and his credibility was thus not only material, but absolutely paramount.

The only meaningful question for this Court to resolve, then, is whether Investigator Maas's omissions concerning the informant's credibility were made with a reckless disregard for the truth. "[C]redibility omissions themselves, even in the absence of more direct evidence of the officer's state of mind, provide sufficient circumstantial evidence to support a reasonable and

thus permissible inference of reckless disregard for the truth." *Glover*, 755 F.3d at 820.

"In this case," the Seventh Circuit has already written, "the questions of materiality and the police affiant's state of mind are intertwined." *Clark*, 935 F.3d 558, 566. The reliability of any of Investigator Maas's corroboration "all depended, from the issuing judge's point of view, on the same officer whose credibility is at issue: Maas omitted all adverse information he had about the credibility of the informant who provided the most specific (but still second-hand) information about drug trafficking." *Id.* The omission of so much important information from the affidavit in this case permits an inference that the omissions were deliberate or reckless and "Maas's credibility can legitimately be questioned here based on what could have been deliberate or reckless omissions of information about the credibility of the informant." *Id.*

"The complete omission of the available damaging information about the informant's credibility permits an inference that Maas was not being honest and careful with the issuing court. Whether he in fact was honest and careful about the facts is an appropriate subject for the *Franks* hearing on remand. *Id.* at 567. Now, with the benefit of Maas's sworn testimony during the *Franks* hearing, this Court is well-equipped to make that determination.

At the time he received the information about the Baywalk Inn, Maas knew that CRI-1 had a prior criminal record. 9/05/2023 Hearing Tr. at 15. He knew that CRI-1 had a history of drug use. *Id.* He knew that CRI-1 had criminal matters pending in court at the time. *Id.* He knew that he was looking for payment and had been paid for working as an informant in the past. *Id.*

Maas chose to include information about the informant's past history in helping law enforcement because it suggested top the judge that the informant was reliable. Tr. at 22. However, Maas knew and agreed that people who are drug addicts oftentimes have credibility problems. *Id.* He acknowledged that whether someone is working off a case or trying to get the

penalties reduced for pending charges has an impact on their credibility and reliability. Tr. at 23. He acknowledged that a person's criminal history and repeatedly being arrested after multiple convictions impacts their credibility and reliability. *Id.* He specifically acknowledged that when a drug addict informant is seeking money and providing information in an attempt to get it, the fact that money is involved that can impact their credibility and reliability. Tr. at 27.

He knew all of this information. He knew it applied to CRI-1. He knew it was relevant to credibility, and he chose not to include it in his warrant application or any information that was reviewed by the issuing judge. Maas was given every opportunity to explain why he didn't include that information. He repeatedly testified that he didn't include it because "It wasn't mandated. It wasn't required." Tr. at 20; See Tr. at 36 (Q Okay. And -- but, because you didn't think it was mandatory, you chose not to include it, correct? A Correct. Q That's a decision you made? A Yes.).

Maas also acknowledged that on multiple prior occasions, he had brough informants before judges to have their information and credibility evaluated by the judge before they made a decision about whether to issue a warrant based on an informant's information. Tr. at 37. He did not do so with this informant, however. *Id.* No specific explanation was ever offered about why Maas decided not to bring the informant before the issuing judge in this case. Presumably, like including information that might lead the judge to believe the informant was less than credible, Maas decided not to do so simply because nobody ever told him it was mandatory. Tellingly, when the Court asked Maas what he would have done if he had reason to doubt the information that CRI-1 was giving him, he replied, "We *probably* wouldn't have even gone through with the search warrant if it was lies." Tr. at 43 (emphasis added).

After Investigator Maas's testimony, it could not be more apparent that he was in

5

possession of a wealth of information that he knew, if disclosed, might lead the judge to have

questions and concerns about CRI-1's credibility. It is also apparent that Maas's failure to

disclose that information is the result of, at a minimum, a reckless disregard for the truth. Maas

knew multiple facts about CRI-1 that he readily admitted were relevant to his reliability. He did

not inform the judge about these facts for the simple reason that nobody ever told him that he had

to, though the same reasoning did not apply to information that he knew would make the judge

*more* likely to find CRI-1 credible. See Tr. at 37. That failure to present information in an

evenhanded way is,  by definition, a reckless disregard for the truth of which Mr. Maas was in

possession.  He specifically chose not to include information he knew might harm CRI-1's

credibility, while specifically choosing to include information  that he knew would bolster it and

specifically choosing not to present CRI-1 in person to the judge, as he had done with multiple

informants in the past. If this is not a reckless disregard for the truth, it can only be because it

was an intentional one. Fortunately for Mr. Maas, this Court need not make that distinction in

order to resolve this issue.

The omissions concerning CRI-1's credibility were undoubtedly material to the probable

cause determination, as the Seventh Circuit has already determined. They were necessarily made

with at least a reckless disregard for the truth, as Maas's own testimony demonstrates that he

recognized the impact the information could have on a credibility determination and chose not to

include it only for the simple reason that he did not believe he had to and thought he could get

away with not doing so. Because one believes they can get away with not presenting material

information that could cause one to question the informant's reliability, and instead presenting

only the information that will suggest reliability and thereby provide the appearance of no

credibility issues to consider, that does not somehow absolve him for demonstrating a reckless

disregard for the truth that he chose not to provide to the judge.  Because probable cause relied

entirely on the informant's information in this case, the search warrant was thus insufficient

under the law and all resulting evidence must be suppressed.

WHEREFORE, Mr. Clarks asks that this Honorable Court find that the search warrant was

invalid and suppress all evidence recovered from the search.


Respectfully Submitted,



/s/Beau B. Brindley
Attorney for Defendant


LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd, Suite 1410
Chicago, Illinois  60604
(312) 765-8878